**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROL BRIGGS ALI,** | : | **Civil No.  2:12-CV-7160** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LEON W. TUCKER,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which has now commanded the attention of two federal district courts, apparently began in 2011 as a dispute over a parking ticket.

The plaintiff, Carol Briggs Ali, who is proceeding as a Natural Person, in Propria Persona, Sui Juri, has identified herself as an aboriginal Moorish American national, and a citizen of the Moorish National Republic Federal Government, Northwest Africa, and as participant in the Moorish Divine and National Movement of the World–the North Gate.  (Doc. 1.)   In April of 2011, Ali was cited by a Philadelphia parking enforcement officer with a parking violation.  (Id.)   Ali contested this violation at an administrative hearing, arguing that Article 6 Clause 2

of the United States Constitution[1], the 1787 Treaty of Peace and Friendship Between Morocco and the United States, the U.N. Universal Declaration of Human Rights, and Executive Order No. 13107, which implements various human rights treaties relating to indigenous people, all combined to prohibit parking citation enforcement against aboriginal Moors like herself. (Id.)

The parking authorities disagreed and at an administrative hearing Ali's novel jurisdictional claims were rejected and this parking citation was upheld. (Id.) Undeterred, Ali appealed this decision to the Court of Common Pleas of Philadelphia County. (Id.) This effort was also unavailing, and on October 22, 2012, the defendant in this civil action, Common Pleas Court Judge Leon Tucker affirmed the decision of the administrative adjudication, rejecting Ali's jurisdictional challenge to the enforcement of Philadelphia's parking regulations with respect to self-declared aboriginal Moors. (Id.)

---

[1]Article 6, Clause 2, of the United States Constitution, referred to as the "Supremacy Clause," provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Art. 6, Cl. 2.

This federal civil rights action then followed. (Id.) In this action, Ali repeated her claims that parking authorities lack the ability under the constitution, U.N. treaties, and federal executive orders to enforce parking rules with respect to citizens of the Moorish National Republic Federal Government, Northwest Africa, and participants in the Moorish Divine and National Movement of the World–the North Gate. The defendant, Judge Tucker, has moved to dismiss this complaint. This motion has been fully briefed by the parties, and upon the recusal of the United States District Court for the Eastern District of Pennsylvania, this matter was reassigned to this court and referred to the undersigned for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss be granted, and this case be dismissed.

## II.    Discussion

### A.    Motion to Dismiss–Standard of Review

The defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can

be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First,

the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this court.

**B.** **This Complaint Fails to State A Claim Upon Which Relief Can Be Granted**

In this case, dismissal of this complaint is warranted because Ali's complaint fails to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. The flaws in the *pro se* complaint lodged by Ali are discussed separately below.

**1.** **Ali May Not Sue State Officials for Their Roles in a Criminal Case Which Resulted in Her Conviction**

At the outset, Ali's complaint fails because it rests on a fatally flawed legal premise. At bottom, Ali seeks to bring a civil rights action against a state judge premised on claims arising out of a state criminal case involving a parking citation, a case that resulted in a state conviction which has not otherwise been set aside or overturned.

This she cannot do. Quite the contrary, it is well-settled that an essential element of a civil rights action in this particular setting is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution, or false arrest claim based upon a state case that resulted in a conviction, the plaintiff's claim fails

as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483( quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id .

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000).

In this case it is evident from Ali's complaint that her prior state criminal prosecution did not terminate favorably for her, since she admits that she was convicted in this state case. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", id., the

immutable fact of Ali's conviction presently defeats any federal civil rights claims based upon the conduct of this state case, and compels dismissal of these claims. In short, this complaint is based upon the fundamentally flawed legal premise that Ali can sue state officials for civil rights violations arising out of her state prosecution even though she stands convicted of the traffic citation charged against her. Since this premise is simply incorrect, Ali's complaint fails as a matter of law.

## 2. The Rooker-Feldman Doctrine Also Bars Consideration of This Case

Moreover, at this juncture, where Ali has filed a civil action which invites this court to reject findings made by the state courts in the course of state litigation, the plaintiff also necessarily urges us to sit as a state appellate court and review, re-examine and reject state court rulings in Ali's state case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which

a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from

considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," particularly where those lawsuits necessarily require us to re-examine the outcome of this local traffic citation litigation. As the United States Court of Appeals for the Third Circuit has observed in dismissing a similar lawsuit which sought to make a federal case out of a local traffic citation:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir.2006) (internal citations omitted). The doctrine occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291, 125 S.Ct. 1517. [Plaintiff] Sullivan filed a Motion to Dismiss in the traffic offense proceedings, challenging the state courts' exercise of jurisdiction. The Court of Common Pleas denied that motion, and Sullivan unsuccessfully appealed to the Superior Court. He next attempted to challenge the state court's exercise of subject matter jurisdiction by filing a civil suit in state court. That claim was rejected by the Court of Common Pleas, the Commonwealth Court, and the Pennsylvania Supreme Court. [Plaintiff] Sullivan continues to challenge the state courts' determinations concerning jurisdiction in the traffic offense proceedings. Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper. Therefore, [Plaintiff] Sullivan's claims are barred by the Rooker-Feldman doctrine. To the extent Sullivan was not "appealing" to the District Court, but instead

was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir.2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here. Thus, in this case, as in Sullivan, the Rooker-Feldman and *res judicata* doctrines combine to compel dismissal of this case, which improperly invites us to act as a Pennsylvania appellate court for state traffic citations when those parking violations involve alleged infractions committed by persons claims the status of Moors.

### 3. This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case

Further, we note that the plaintiff also appears to request an injunction enjoining the state courts from proceeding forward with traffic citation enforcement against aboriginal Moors. (Doc. 1.) To the extent that Ali's complaint invites this court to enjoin pending state criminal cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts:

"Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for <u>Younger</u> abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for <u>Younger</u> abstention are present here. First, it is evident that there were state proceedings in this case. Second, it is also apparent that those proceedings afford Ali a full and fair opportunity to litigate the issues raised in this lawsuit in this state case. <u>See</u> <u>Sullivan v. Linebaugh</u>, 362 F. App'x 248, 249-50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since these matters involve state traffic law enforcement, an issue of paramount importance to the state. <u>See, e.g.,</u> <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for <u>Younger</u> abstention are fully met here, the decision to abstain rests in the sound discretion of this court. <u>Lui v. Commission on</u>

Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

### 4. The Judge Named in This Lawsuit Is Entitled to Immunity

Finally, in its current form, Ali's *pro se* complaint fails to state a claim against the sole defendant named in this pleading, who is a state judge. It is well-established that the principal federal civil rights statute, 42 U.S.C. § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate, and pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims

advanced by the plaintiff, including whether any of the putative defendants are entitled to immunity from civil rights liability.

Liberally construed, this *pro se* complaint seeks to hold a state court judge personally liable for alleged civil rights violations arising out of the performance of judicial acts in Ali's state traffic case. To the extent that Ali seeks in this complaint to hold a state judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon this state case, it is well-settled that such officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Ali from maintaining this civil action against any state judicial officer. In particular, the judge named in this complaint is entitled to judicial immunity for his actions in this state proceeding since a judge is absolutely immune from personal liability for any judicial acts, including presiding over a criminal case or sentencing a defendant. See, e.g., Arsad v. Means, 365 F.App'x 327 (3d Cir. 2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting a similar effort to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011) Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ).

In short, since Judge Tucker is immune from liability for his judicial role in case, the plaintiff simply may not maintain an action against any of the judge for judicial acts, and her claims against the defendant judge must be dismissed.

In closing we note that Ali's claims, while imaginative, are not entirely novel. Quite the contrary, a federal court in New Jersey has recently disposed of an identical claim, in a similar fashion, stating in terms that are equally applicable here that:

> Pursuant to Rule 12(b)(1), this Court must refuse to exercise jurisdiction over Plaintiff's claims for four reasons. First, the Third Circuit has held that a federal district court may not exercise jurisdiction over a municipal court proceeding such as the instant case involving a traffic citation. See Janciga v. Vora, 257 Fed. Appx. 530, 530–531 (3d Cir.2007) (dismissing appeal for a claim concerning a traffic citation); see also Pa. v. Vora, 204 Fed.Appx. 134, 136 (3d Cir.2006) (holding that a federal district court does not have jurisdiction over a state traffic court

matter). It follows that proper procedure dictates review through the state appellate process, not the federal system. E.B. v. Verniero, 119 F.3d 1077, 1090 (3d Cir.1997) (barring federal district court from reviewing lower state court decision under Rooker–Feldman doctrine). Therefore, in this case, the Rooker–Feldman doctrine bars adjudication of this claim because a decision by the federal court would undermine the ability of the named Municipal Court defendants to enforce their judgments. D.C. Ct. of Apps. v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fid. Tr. Co., 263 U.S. 413, 414–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); McAllister v. Allegheny County Fam. Div., 128 Fed.Appx. 901, 902 (3d Cir.2005). Third, Plaintiff attempts to assert jurisdiction pursuant to "The Moorish Power Treaties of Protection 1796." This alleged status creates no jurisdiction in this Court. Jefferson El Bey v. North Brunswick Mun. Court, F.Supp.2d WL 2510725 (D.N.J.2008); see also Great Seal Moorish Sci. Temple v. N.J., No. 05–345, 2005 WL 2396311, at 1 (E.D.Pa.2005) (dismissing civil rights claim by plaintiff who asserted special jurisdictional rights due to his Moorish nationality). Fourth, absolute-immunity bars claims against both Municipal Court defendants in this case. Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding that judges and courts cannot be held civilly liable for their judicial actions). Moreover, even if this court's exercise of subject-matter jurisdiction was proper, alternative rules of procedure would mandate dismissal because the claims are meritless. Rule 12(b)(6) permits a court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief may be granted. A plaintiff must show "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 127 S.Ct. 1955, 1974 (2007). The *Twombly* plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands a showing that there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556). In the present case, plaintiff fails to plead any facts that explain how the traffic citations were unlawful. Indeed, plaintiff refers to the traffic tickets only once in each pleading. In lieu

of facts, plaintiff presents pages of religious declarations and unsubstantiated legal conclusions. The Moors profess that they are sovereigns of the Moorish Empire and not subject to the laws of the United States. Plaintiff's denunciation of the power of the federal government over the Moors is in direct contradiction to his simultaneous petition for relief under the United States Constitution. This court need not accept plaintiff's " 'unsupported conclusions and unwarranted references,' " Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir.2007) (quoting Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.1997); Wyeth v. Ranbaxy Labs., Ltd., 448 F.Supp.2d 607, 609 (D.N.J.2006) (dismissing a claim supported only by "[l]egal conclusions made in the guise of factual allegations"). Therefore, plaintiff's claims for relief are without merit.

El v. Asbury Park Mun. Court, CIV. 11-1648 GEB, 2011 WL 2148854 (D.N.J. May 31, 2011)

Finally, we recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however, the plaintiff has failed to state a viable federal cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that she has no right to relief. Therefore, we find that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

In short, in this case there is "no hinge nor loop to hang a [claim] on" for Ali.

Othello, ACT III, Scene 3.  Accordingly, it is recommended that the complaint be

dismissed without further leave to amend.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

plaintiff's complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set
forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 10th day of April 2013.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge